UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JAMES DELLINGER,                          )
                                          )
        *Petitioner*,                     )
v.                                        )          NO. 3:09-cv-104
                                          )          *VARLAN/SHIRLEY*
                                          )          **Death Penalty**
RICKY BELL, Warden,                       )
                                          )
        *Respondent*.                     )

## MEMORANDUM AND ORDER

This death penalty case filed under 28 U.S.C. § 2254 is before the Court on Petitioner's

motion seeking to engage in discovery from the files of various governmental agencies and seeking

physical evidence for testing [Doc. 46]. In his motion seeking wide-ranging discovery, Petitioner

requests the production of the following: (1) shotgun hulls and photograph evidence of a fingerprint

revealed under ultra-violet light on a shotgun hull;[1] (2) all records, materials, and files of the

Tennessee Bureau of Investigation ("TBI") and/or the TBI Laboratory concerning the investigation

of this case and all suspects alleged to have been involved in the homicides and a cocaine conspiracy

case prosecuted in the Federal District Court for the Eastern District of Tennessee at Knoxville

("cocaine conspiracy case");[2] (3) all records from the Federal Bureau of Investigations ("FBI"), the

---

[1]      Petitioner believes the hulls are "variously located" at the Tennessee Supreme
Court and the Sevier County and Blount County Sheriff's Departments, and that the photograph
of the fingerprint is in the custody of he Blount County Sheriff's Department.

[2]      This request also seeks all files, documents, records, notes, field notes, bench
notes, logs, memos, records of telephone conversations, forensic examinations of any sort,
physical evidence or tangible items of any sort, photographs, tape recordings, computer records
of any sort, videotapes, x-rays, and any other information of any sort, in whatever medium,
concerning in any manner the deaths of Tommy Griffin and Connie Branam, and the

1

TBI, the Alcohol, Tobacco, and Firearms agency ("ATF"), the 4th and 5th Judicial District Drug

Task Forces, and the Sevier County and Blount County Sheriff's Departments for a five-year span

of time (from July 29, 1990, until July 29, 1995), regarding any connection between this case and

the federal cocaine conspiracy case; (4) all files regarding all investigations involving Bill Cogdill

from the Sevier County Sheriff's Department, TBI, and District Attorney General for the 4th Judicial

District; (5) Asheville, North Carolina Police Department ("APD") records of the results of the

examination, performed by APD Sargent Ross R. Robinson on the latent print found on the shotgun

hull seized from the crime scene; and finally, (5) Blount County dispatch records for February 21,

1992, including any information relating to a male juvenile taken into custody that evening by the

Blount County authorities [Doc. 46]. Petitioner contends that access to these items would assist him

in establishing violations of his constitutional rights. Respondent objects to the requests on the

ground that Petitioner has failed to show good cause for discovery, and for various other reasons.

## I.    *Applicable Law*

Although a habeas petitioner in federal court is not entitled to discovery as a matter of course,

such a petitioner is entitled to discovery upon a showing of good cause. *Bracy v. Gramley*, 520 U.S.

899, 903-05 (1997). Therefore, discovery is appropriate where specific allegations show reason to

believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is

entitled to relief or that the discovery will lead to relevant evidence to support his habeas claims.

*Id*. at 908-09. Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District

Courts provides: "A judge may, for good cause, authorize a party to conduct discovery under the

---

investigation of their deaths, and the investigation of any suspect alleged to have been involved
in their deaths.

Federal Rules of Civil Procedure and may limit the extent of discovery." "The burden of demonstrating the materiality of information requested is on the moving party[,]" *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001), *cert. denied*, 537 U.S. 831 (2002), however, a petitioner need not show that additional discovery would definitely lead to relief. Rather, he need only show good cause that the evidence sought would lead to relevant evidence, regarding his petition. Discovery that would not resolve any factual dispute entitling a petitioner to relief, even if the facts were found in his favor will not be granted. Likewise, a motion that is entitled a discovery motion but is, in effect, a fishing expedition, will not be granted. *Id.*

Cases in which the courts have granted Habeas Rule 6 discovery are cases were a habeas petitioner established good cause for discovery by making sufficient specific factual allegations corroborating the underlying habeas claim. For example, in *Bracy v. Gramley,* 520 U.S.899 (1997), the Supreme Court concluded good cause was shown when petitioner specifically alleged that his due process rights had been violated because, contemporaneously with his trial, the trial judge was taking bribes from other criminal defendants, and was, therefore, unduly "prosecution oriented" at Bracy's trial in an effort to deflect suspicion about his corruption. Bracy's claims were framed in specific terms and were supported by objective, concrete factual evidence tending to support his theory. In support of the specific allegations of his petition, Bracy relied upon the judge's indictment and conviction on bribery charges, and he presented a number of circumstances which indicated the result of his trial was a foregone conclusion. *Id.* at 907-08 (noting the judge appointed a former associate as Bracy's attorney; at least one other former associate of the judge had bribed him; and after his appointment in Bracy's capital case, counsel promptly announced he was ready to proceed to trial and never requested additional time to prepare).

3

Discovery has also been permitted in capital cases where prior testing of evidence resulted in inconclusive determinations and the advancement in technology could demonstrate a viable claim of actual innocence. For example, Habeas Rule 6 discovery was permitted upon a finding that good cause existed to conduct DNA testing on seminal fluid that had been deemed inconclusive at trial based on DNA test technology that was below the standards of the DNA test available at the time of the habeas petition, because the new DNA test might procure conclusive evidence. *In re Braxton*, 131 F.Supp.2d 756 (E.D. Va. 2000), *app. denied, Mandamus denied* 258 F.3d 250 (4th Cir. 2001) (district court found); *Cf. Stouffer v. Reynolds*, 168 F.3d 1155 (10th Cir. 1999) (denying new DNA testing where the prior results identified the blood on petitioner's sleeve to match the victim's blood and the stains on his belt tested negative for human blood).

Cases in which courts have denied Habeas Rule 6 discovery are cases where petitioners have not made a factual credible showing that the requested discovery would contain helpful information, but rather made generalized, speculative, or conclusory allegations. For example, in *Byrd v. Collins*, 209 F.3d 486, 515 (6th Cir. 2000), the Sixth Circuit upheld the district court's ruling denying discovery of the prosecutor's work product notes of conversations with informants because the petitioner had not made a credible showing that the documents would contain information indicating the informant had lied or cut a deal with the government. The court found that the affidavit the petitioner submitted in support of his claim was insufficient because it did not contain any evidence within the affiant's personal knowledge, rather, it was "nothing more than hearsay.'" *Id*. at 514. The Sixth Circuit explained that "[t]o hold otherwise would in effect mandate that every time a petitioner makes an unsubstantiated allegation that his trial was constitutionally unfirm, the post-conviction court must conduct an evidentiary hearing and order the prosecution's files to be opened." *Id.*

4

Petitioner frequently references Wellons v. Hall, 130 S. Ct. 727 (2010), apparently as support for the contention that discovery should be granted even if the Petitioners claims are based on surmise and speculation, because with discovery Petitioner might be able to do more than speculate or surmise. This Court does not read that case or that quote to stand for that proposition. Rather, the Court reads Wellons as a critique of the 11th Circuit's failure to rule on the merits of Petitioner's request for discovery. The Supreme Court neither ordered discovery, nor indicated it was warranted, but only remanded, in part for the 11th Circuit to consider and rule on the issue of whether or not Petitioners allegations warranted discovery and/or an evidentiary hearing.

In addition, discovery has been denied when a petitioner did not show the requested discovery could yield evidence excusing his procedural default of the underlying claim and when the "request appears to be a classic 'fishing expedition.'" *Williams v. Bagley*, 380 F.3d 932, 976 (6th Cir. 2004); *also see Beuke v. Houk*, 537 F.3d 618, 654-55 (6th Cir. 2008) (deny discovery because Beuke had not established requested discovery was unavailable during direct appeal and that it would uncover evidence of a constitutional violation). Discovery also has been denied for failing to develop the evidence in state court proceedings, *see Isaacs v. Head*, 300 F.3d 1232 (11th Cir. 2002) (discovery denied as a result of Isaacs' lack of diligence in developing the evidence during the state court proceedings), and for making unsubstantiated charges that were nothing more than mere conjecture. *See Higgason v. Lemmon*, 6 Fed.Appx. 433, 436 (7th Cir. 2001), *available at* 2001 WL 436180, **3 (discovery was denied in a habeas case based on a claim of loss of good time credit upon a finding that charges that prison official acted with improper motives were unsubstantiated and nothing more than mere conjecture without any basis); *Rich v. Calderon*, 187 F.3d 1064, 1067 (9th Cir. 1999) (noting that habeas is an important safeguard to correct real and obvious wrongs but

5

was "never meant to be a fishing expedition . . . to explore their case in search of its existence.").

## II.     *Analysis*

### A.     *Production of Shotgun Hulls & Photograph of Fingerprint on Hull*

In his discovery motion, Petitioner first requests shotgun hulls found at the Blount County scene of Tommy Griffin's homicide and shotgun hulls seized from Petitioner's yard. Petitioner requests the production of these shotgun hulls so he may subject the evidence to scientific analysis, including ballistics comparison analysis. In support of this request, Petitioner contends he has alleged counsel was ineffective for failing to investigate ballistics evidence, the State falsified evidence, and he is actually innocent of the offense for which he has been convicted, all of which, according to Respondent are procedurally-barred claims.

Second, Petitioner requests to discover the photographs in the possession of the Blount County Sheriff's Department of a partial fingerprint revealed by use of an ultra-violet light source on one of the two shotgun hulls which were found at the scene of the homicide in this case. Petitioner argues that although the State's examiner determined the print was of no value, a partial print may be used to exclude anyone whose prints do not match the loci that are visible. Although Petitioner claims that a review of the record does not reveal that this print was made available to trial counsel, the Court notes that a review of the record, likewise, does not reveal that it was ***not*** made available to trial counsel, as they were not questioned about this print during state post-conviction proceedings.

Respondent opposes this request for several reasons. Specifically, Respondent contends Petitioner has failed to provide good cause for the requested discovery; the underlying claims are procedurally defaulted since they were not raised in state court; there was no actual innocence claim

6

raised in state court based on ballistic or photographic evidence; Petitioner has failed to demonstrate

cause and prejudice for his default, and his claim of actual innocence is insufficient as it is not an

allegation of factual innocence, but rather is a request to obtain discovery in hopes of finding relevant

evidence to support his now, factually unsupported, claim of actual innocence.[3]

### 1. Ballistics Facts

The Blount County Sheriff's Department found two twelve-gage shotgun hulls at the crime

scene and when they executed a search warrant on Petitioner's property they confiscated several

expended shotgun shells, a .303 rifle, and a Mossberg shotgun barrel. *See State v. Dellinger,* 2001

WL 220186, *6 (Tenn.Crim.App. 2001). During Petitioner's trial, TBI Agent Don Carman "testified

that after an extensive investigation, his office concluded that the .303 rifle shell recovered from the

scene of the burned vehicle was fired from the rifle that was found in Dellinger's home. He also

testified that shotgun shells found in Dellinger's yard and the surrounding area and the shells found

near Mr. Griffin's body had been fired from the same shotgun." *Id.*[4]  In addition, Joseph Mason, a

firearms expert employed by the United States Treasury Department, testified "seven of the twelve-

gauge shotgun cartridges delivered to him for examination were fired from the same shotgun,

including two shells found near Griffin's body." *Ibid.*

The document submitted by Petitioner, showing the chain of custody for certain items of

evidence, reflects the two shotgun shells and two Budweiser beer cans taken from the crime scene,

---

[3]     Because the Court will resolve the motion based on the lack of good cause, there
is no need to address Respondent's other reasons for opposition to the discovery.

[4]     The .303 rifle shell was recovered at the scene where the victim's sister's body
was found.

were transported to Asheville, North Carolina Police Department by Officers Widener, Hamilton, and Gourley on March 3, 1992, and an unsuccessful attempt was made to further develop latent prints (Doc. 48-1). The next day the items[5] were submitted to the TBI Laboratory for analysis by Officer Muncy and they were returned on June 11, 1992, to Blount County. On February 10, 1993, TBI Agent Don Carmen requested the items be taken back to the TBI lab where a brief exam was done and the items were returned. On February 12, 1993, at the request of the TBI lab, the items were taken back to them and returned on that same day.[6]

Three days later, the items were taken to Oak Ridge per court order for defense expert Captain Bryan Sturgill of the Knox County Sheriff's Department to examine. They were returned to Blount County on that day. Three days later the items were taken to the Treasure Department, ATF, National Laboratory in Rockville, Maryland and examined by Agent Joe Masson and returned to Blount County at the conclusion of the examination. The items were introduced and admitted as evidence during the course of the Sevier County trial. The hulls were returned to Officer Muncy on January 10, 1994.

Subsequently, on February 18, 1994, the hulls were re-submitted to the TBI Lab along with a Court Order for defense expert examination. Pat Garland examined the items at the time and concurred with Don Carmen's previous findings. It appears the items were returned on October 20, 1994. However, on January 4, 1996, pursuant to a Court Order, the items were taken to Dr. Cleland

---

[5]     It is unclear from reading the document whether "items" refer to the items in all six groups of exhibits referenced in the document or whether "items" refers only to the two Remington Peters shotshells and two Budweiser beer cans taken from the Manning Lane crime scene.

[6]     The Court notes Agent Don Carmen testified at the Sevier County trial on February 19, 1993, less than two weeks after requesting the evidence.

8

Blake, a defense ballistics expert, who did not complete his exam on that date, so the items were returned to him for completion of his examination on January 17, 1996.

2.     *Lack of Good Cause for Discovery of Ballistic Evidence*

Petitioner contends the shotgun hulls were repeatedly tested without any apparent reason, the reports of the repeated testing were withheld from defense counsel, and defense counsel failed to investigate the ballistic evidence.  Although Petitioner does not make a general, much less a specific, allegation regarding the credibility of the ballistics tests results, he seemingly contends that the examination of the evidence on more than one occasion by more than one expert on behalf of the prosecutions is sufficient to challenge the credibility of the results and that it provides good cause warranting discovery of the ballistic evidence.  The Court disagrees for the following reasons.

First, for the reasons explained below, there does appear to be legitimate reasons for the evidence being tested or examined on several occasions.  Second, there is no evidence in the record supporting Petitioner's claim that defense counsel was denied this information.  And finally, Petitioner's claim that trial counsel failed to investigate the ballistic evidence is belied by his own submissions which reflect the evidence was tested by several defense experts.

**a.     Testing of Ballistics Evidence**

Petitioner contends that because he has shown the ballistic evidence was tested and re-tested by the TBI and AFT without the defense having access to any bench notes, memos, or indications as to why the re-testing was necessary, he has demonstrated good cause for discovery of the ballistic evidence [Doc. 48].  The Court disagrees. Petitioner's contends this evidence was subjected to "repeated testing," in an attempt to insinuate that something untoward occurred with the testing of this evidence.  The record simply does not support that insinuation.  The record reflects that after the

9

initial attempt to further develop latent prints by the APD proved unsuccessful, the evidence was subsequently transported to different locations on different occasions to be tested and/or examined by prosecution and defense experts.

A review of the prosecution's examinations of the evidence, reflects the items were submitted to the TBI (a state agency) for analysis on March 4, 1992, and returned to Blount County on June 11, 1992. The items were subsequently taken back to the TBI lab on February 10, 1993 at the request of TBI Agent Don Carmen for a brief exam, and two days later, at the request of the TBI lab, they were taken back to the TBI and returned that same day. These two examinations were performed just prior to Agent Carmen testifying about this evidence and his test results on February 19, 1993, at Petitioner's Sevier County trial.[7]

These items were subsequently taken to the Treasury Department, ATF National Laboratory in Rockville, Maryland (a federal agency), on February 18, 1993, and examined by Agent Joe Masson, who testified on behalf of the prosecution in Petitioner's death penalty trial. Therefore, contrary to Petitioner's assertion, there are no "substantial questions about repeated testing . . . (Doc. 48), and there is no proof that the evidence was "tested and re-tested by the TBI and ATF. (Doc. 48). Rather, there is only evidence that the TBI and AFT tested the evidence, and that on two occasions, less than two weeks prior to Agent Cameron testifying about the evidence, it was returned to him for examination or review. There simply is no evidence before this Court from which it can even infer good cause for the discovery of this evidence on the grounds that the evidence was "tested and

---

[7]     As the parties are aware, witnesses normally review evidence and documents in preparation of testifying at trial. Nevertheless, even assuming, as Petitioner contends, that the items were being retested on those days, such is insufficient to demonstrate good cause to discover the items.

re-tested."

### b. Access to Notes, Memos, or Reasons for Testing

Petitioner asserts trial counsel did not have "access to any bench notes, memos, or indications as to why the re-testing was necessary" [Doc. 48]. Petitioner, however, has failed to support this allegation with any facts. Petitioner has not directed the Court's attention to the location of any evidence demonstrating an inquiry was made, nor has the Court located any evidence in the record where inquiry was made, of trial counsel about their knowledge of the ballistics test and why the alleged re-testing was necessary. Contrary to Petitioner's allegation, it appears trial counsel was aware that more than one agency tested the evidence for the prosecution, as both Agent Carmen and Agent Masson testified about their findings on behalf of the prosecution in Petitioner's trial, which was conducted August 19-31, 1996 [Addendum No. 1, Vol, 19, p. 8 of the Index of Witnesses]. Consequently, there is no evidence before this Court, other than Petitioner's factually unsupported speculative conclusions that defense counsel did not have access to any bench notes, memos, or indications as to why the re-testing was necessary.

### c. Trial Counsel Investigated Ballistic Evidence

According to Petitioner, testing of this evidence can establish that Petitioner's trial attorneys were ineffective for failing to investigate the ballistic evidence and that Petitioner is actually innocent because someone else loaded the gun which killed the victim. These uncorroborated, factually unsupported conclusions simply do not meet the requirement of "good cause" for discovery in this matter.

The record, which was submitted by Petitioner, clearly indicates that trial counsel had the ballistic evidence tested, as the evidence was taken to three different locations on four occasions to

11

be examined by defense experts (Doc. 48-1). In addition, Mr. Eugene Dixon, one of Petitioner's trial attorneys testified during the state post-conviction proceedings that they talked to seven to nine ballistics experts, trying to counter the shotgun pin strike evidence [Addendum No. 4, Vol. 8-10, at 550]. Petitioner's own submission demonstrates defense counsel had the ballistic evidence tested by three different defense experts. Therefore, in addition to a lack of a factual basis for his allegation that trial counsel were denied access to any bench notes, memos, or indications as to why the re-testing was necessary the record demonstrates Petitioner is simply incorrect in his allegation that trial counsel failed to investigate the ballistic evidence.

In sum, there simply is no evidence before this Court that demonstrates good reason to believe Petitioner may, through discovery, garner sufficient evidence to entitle him to relief as he has not provided any plausible indication that the retesting might generate such a result. *See Hill v. Ozmint*, 339 F.3d 187, 201 (4th Cir. 2003) (a claim that discovery might reveal helpful evidence is speculative and is insufficient to make the required showing of some plausible indication that the evidence might demonstrate relief is warranted); *Munzo v. Keane*, 777 F.Supp. 282, 287 (S.D.N.Y. Nov. 4, 1991) (Discovery was not granted because petitioners did not produce any specific evidence to support their claims).

Petitioner's request to discovery the ballistic evidence is nothing more than a prohibited "fishing expedition." Petitioner's failure to make specific allegations of fact regarding the credibility of the State's ballistics' experts and test results in connection with some claim for relief in the petition, results in his failure to demonstrate good cause for the discovery of the ballistics evidence. Accordingly, discovery of the ballistics evidence is **DENIED**.

12

### 3. Lack of Good Cause for Photograph of Fingerprint

Petitioner also requests to discover the photograph(s) of a partial fingerprint revealed by use of an ultra-violet light source on the shotgun hull which was found at the scene of the homicide which he claims supports his actual innocent claim and his claim trial counsel were ineffective for failing to investigate this evidence. Petitioner argues that although the State's examiner determined the print was of no value, a partial print may be used to exclude anyone whose prints do not match the loci that are visible. Petitioner claims he is entitled to the discovery of the photographs because, "[t]hough the State disclosed the existence of the latent print to the defense prior to trial, the State did not make the print available to the defense or reveal that, while the print is insufficient for a positive identification, the partial print potentially possesses enough points of identification to rule **out** Mr. Dellinger as the perpetrator of the crime." (Doc. 48, p. 3) (emphasis in original).[8] Petitioner contends the identity of the person who loaded the fatal shotgun hull into the shotgun is highly probative of the identity of the perpetrator of the crime.

Neither of Petitioner's claims for the discovery of this print are sufficient to demonstrate good cause. First, Petitioner's contention that the State did not make the print available to the defense, is nothing more than factually unsupported speculation. Petitioner has not directed the Court's attention to any evidence that trial counsel failed to investigate or had no knowledge of the print, and the Court did not locate any evidence that inquiry was made of trial counsel on this subject during Petitioner's state post-conviction hearing.

---

[8]    The Court observes that on January 17, 1996, "photos taken of the shotshell hulls by Joe Masson, ATF, were again taken to Dr. Blake [defense expert] . . . [to] complete[] his exams. . . ." (Doc. 48-1, p. 4). The Court is unable to determine whether there was a photo of the print taken to Dr. Blake.

Moreover, Petitioner's allegation that the partial print "potentially" possesses enough points of identification to rule out Petitioner is too speculative in nature to warrant discovery. Petitioner has not pointed to any evidence that lends support to his allegation that the print has potential to possess enough points of identification to rule out Petitioner. This uncorroborated, speculative allegation is insufficient to show a reason to believe this photograph is sufficient to exclude Petitioner.

Moreover, even if Petitioner is able to demonstrate the print in the photograph does not belong to him, it is insufficient to entitle him to relief on his claim of ineffective assistance of counsel or any other claim he alleges it supports, as the fact that he did not load the weapon does not exonerate him. Assuming for the sake of discussion that the print was sufficient to rule out Petitioner and it did so, that evidence would still be insufficient to demonstrate prejudice and entitle him to relief as his conviction is not based on evidence that he loaded the weapon or even that he was the actual shooter. Petitioner makes no effort to explain how evidence that his co-defendant or some other party, rather than himself, loaded that one shotgun shell would entitle him to relief or lead to relevant evidence regarding his petition.

In order to establish "good cause" for discovery, Petitioner must establish that the requested discovery will develop facts which will lead to relevant evidence to enable him to demonstrate that he is entitled to habeas relief. *See Bracy*, 520 U.S. at 908-09. The burden is on Petitioner to establish the materiality of the requested discovery. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). "[A] petitioner's factual allegations must be specific, as opposed to merely speculative or conclusory, to justify discovery under Rule 6." *Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000). The mere speculation that the print may be sufficient to exclude Petition is enough to

14

establish good cause for discovery of the photograph. *See Arthur v. Allen*, 459 F.3d 1310, 1311 (11th Cir. 2006) (Mere speculation that DNA testing could demonstrate that the same person who raped the victim also physically assaulted her, was insufficient to demonstrate good cause for discovery").

In summary, the documents Petitioner attaches to his reply to Respondent's response to the discovery motion do not provide any information from which the Court is able to infer the photograph may possess enough points of identification to be used to exclude Petitioner or to lead to relevant evidence. Accordingly, because Petitioner's request for discovery falls more in the category of a "fishing expedition masquerading as discovery[,]" *Stanford v. Parker*, 266 F.3d at 460, the request to discover the photograph of the latent print is **DENIED**.

> **B.    *All Tennessee Bureau of Investigation ("TBI") and/or TBI Laboratory Records and/or Files Concerning the Investigation of this Case and the "Cocaine Conspiracy Case" Prosecuted in the Federal District Court of the Eastern District of Tennessee at Knoxville*, *and TBI Manuals***

Petitioner requests the complete TBI and TBI Lab files concerning the investigation of this case, the investigation of any suspect alleged to have been involved in this case, the investigation of any person known to law enforcement to have participated in the cocaine conspiracy prosecuted in the Federal District Court of the Eastern District of Tennessee at Knoxville ("Cocaine Conspiracy Case"), and the investigation of any other suspect presently unknown to Petitioner. In support of this request, Petitioner contends the requested discovery is highly relevant to several claims he raised in his amended petition, i.e., 3.5.1.–*Brady* violation - withheld evidence of other suspects; 3.5.1.1.1.–*Brady* violation - withheld information of Tommy Griffin's involvement in drug activity; 3.5.1.2. –*Brady* Violation - withheld information of Tommy Griffin's and Connie Branam's

cooperation in the investigation of a federal cocaine conspiracy; 3.5.1.3.–*Brady* violation - withheld information of other murders; 3.5.1.4.–*Brady* violation-information that victims were killed by someone other than James Dellinger as a result of drug activity; 3.5.3.–*Brady* violation - withheld T.B.I. evidence concerning serial re-evaluation of shotgun shells; 3.5.4.–*Brady* violation - withheld information regarding latent print information; 3.6.4.–false testimony of ballistics experts Don Carmen and Joseph Masson. Although Petitioner lists all claims to which he contends the requested discovery is relevant, he has failed to explain or submit any grounds upon which the Court could conclude he has demonstrated "good cause" for the requested discovery.

Petitioner has provided no factual allegations to support his request but rather, states that in addition to evidence that Bill Cogdill confessed on numerous occasions to having killed Connie Branam, law enforcement reports indicate the victim in this case was involved in drug trafficking. Initially, the Court observes that Petitioner's claim that Bill Cogdill confessed on numerous occasions to having killed Connie Branam is based on hearsay allegations by Joyce Tipton that Mr. Cogdill made these statements while intoxicated and denied them when sober [Doc. 46-24]. Nevertheless, Mr. Cogdill was interviewed by trial counsel, as one of Petitioner's trial counsel, Mr. Eugene Dixon testified that:

> [H]e attended most of the petitioner's Sevier County trial and was generally aware of what the state's evidence would be in the Blount County case as a result[, and] one defense strategy was to contend that someone other than the petitioner and Sutton had killed the victim and the defense attempted to develop other suspects. . . .[H]e was aware of allegations that a man named Bill Cogdill, who was an acquaintance of the petitioner and Sutton, confessed or admitted his involvement in the victim's murder shortly afer it happened[, but] when he located and interviewed Cogdill, . . . [he] denied being involved in the murder or ever having made statement that he was. . . . [Dixon] received a copy of a memorandum concerning Cogdill before the trial, but he did not recall who provided the information to him."

16

*Dellinger v. State*, 2007 WL 2428049, at *14 (Tenn.Crim.App. 2007).[9]

Consequently, the record reveals trial counsel was aware of the allegations against Mr. Cogdill but, after an investigation into the matter, made the strategic decision not to present him as a witness. As to the claim concerning the withholding from trial counsel of Joyce Tipton's statement, Petitioner has not directed the Court's attention to any testimony by either trial attorney that he was unaware of the statement.[10] Because Petitioner has not made specific allegations of fact regarding the failure to disclose this statement in connection with some claim for relief in his petition, or made any allegation with sufficient specificity from which the Court could legitimately infer such statement was not disclosed, he has not demonstrated good cause for the requested discovery.

Petitioner also claims it was rumored that the victim set up Mr. Floyd in relation to the federal cocaine conspiracy case, leading to speculation that Mr. Floyd caused Mr. Griffin to be killed. That is just as Petitioner describes it, a rumor and speculation, neither of which are sufficient to enable this Court to find good cause to order the requested discovery.

Petitioner is reminded that a federal habeas proceeding is not a second trial. *Byrd v. Collins*, 209 F.3d at 516 ("More fundamentally, we refuse to transform a federal habeas proceeding into a second trial"). In addition, "[c]onclusory allegations are not enough to warrant discovery under

---

[9] Mr. Cogdill testified during the Sevier County trial that he did not make any statement implicating himself to Joyce Tipton or to any other witness.

[10] Ms. Tipton testified during the Sevier County trial about different conversations she had with Mr. Cogdill indicating he had some knowledge about the murders but on cross-examination she admitted he had a reputation for being a liar and on redirect, she admitted she thought he was lying about his knowledge of the murders until the bodies were found, at which time she contacted law enforcement about their previous conversations. *See* Civil Case Number 3:07-cv-30 [Addendum No. 3, Vols. 7 & 8, at 1732-58].

17

Rules 6; the petitioner must set forth specific allegations of fact[,]" *Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009) (internal quotation marks and citations omitted), that show reason to believe the discovery would lead to relevant evidence regarding claims raised in the habeas petition.

Petitioner's state trial counsel interviewed Mr. Floyd as he testified he "visited Mr. Floyd to ascertain whether he could provide information on a possible drug dealing connection as a motive for someone to kill the victim. He said that following his interview, he concluded that Floyd could not or would not help the defense." *Dellinger v. State*, 2007 WL 2428049, at *15 (Tenn Crim.App. 2007), *perm. app. granted,* 279 S.W.3d 282 (2009) (affirmed in part and reversed in part, on other grounds).

Absent from Petitioner's argument is any credible reason to believe that the requested material contains information which was not disclosed to the defense, should have been disclosed to the defense, or which will lead to relevant evidence. The fact that other suspects were investigated for the commission of this crime or that the victim and his sister may have been involved in a narcotics conspiracy are not enough for this Court to conclude good cause exists for this discovery.

Therefore, having failed to show good cause for the discovery of the TBI and TBI Lab files, records, and manuals concerning the investigation of this case, the investigation of any suspect alleged to have been involved in the homicides, or any other person know to law enforcement to have participated in the federal cocaine conspiracy case, Petitioner's requests are **DENIED**.[11]

---

[11]    As to Petitioner's allegation that"[t]he policies and procedures of the laboratory at the time this evidence was examined is relevant to Mr. Dellinger's claim that the evidence presented by the State was false, both as to the false positive match testified to by the State examiner of the ballistics evidence and as to the false impression created by the State's claim that the latent prints developed from the shotgun hulls were useless for identification[,]" such allegations are insufficient to demonstrate good cause exists to grant the requested discovery. Petitioner's bald claim that the evidence presented by the State was false lacks any specificity and coorboration. Hence, Petitioner's factually unsupported allegations and generalized

18

**C.** ***Requests for Records Dating From July 29, 1990, to July 29, 1995, from the FBI, TBI, AFT, 4th and 5th Judicial District Drug Task Forces, and the Sevier County and Blount County Sheriffs' Department***

Petitioner requests all records from the above referenced agencies regarding any connection between this case and the federal cocaine conspiracy case. Specifically, he requests all records, for a five-year time-span, relating to the victim in this case, Tommy Griffin, and his sister, Connie Branam, both of whom he contends had some association or connection with the federal cocaine conspiracy case. Petitioner claims Mr. Griffin was a drug mule for Bobby Floyd, one of the defendants convicted in the federal drug conspiracy case.[12] Petitioner has submitted a transcription which allegedly includes a conversation with the victim in this case, who supposedly was using the name Doodley or Dooley. However, that transcript does not provide any evidence from which the Court can infer good cause exists for the requested discovery. Assuming the victim and his sister were associated with the federal cocaine conspiracy case and were used by law enforcement as cooperating individuals or informants, Petitioner has not directed the Court's attention to anything in the transcript from which the Court can even infer that there is reason to believe discovery of that evidence will lead to the discovery of any relevant evidence.

As previously stated, good cause exists where specific allegations before the Court show reason to believe Petitioner, may, if the facts are fully developed, be able to demonstrate he is entitled to relief. *Harris v. Nelson,* 394 U.S. 286, 300 (1969). Not only is this request over broad

---

statements about the possible existence of some helpful evidence simply are inadequate to demonstrate good cause for the requested discovery.

[12]     During the state post-conviction proceedings, one of Petitioner's trial attorneys, Mr. Charles Deas, testified co-counsel traveled to Alabama and interviewed Mr. Floyd in prison. Although they thought Mr. Floyd might know something about the murders, they elected not to call him to testify since he was not cooperative. *Dellinger v. State*, 2007 WL 2428049, at *8 (Tenn.Crim.App. 2007),

and unduly burdensome, Petitioner has not provided any credible reason, i.e., no good cause, to believe that the discovery of this evidence will lead to the discovery of any relevant evidence. Vague and factually unsupported claims are insufficient to warrant discovery under Rule 6, and Petitioner may not embark on a fishing expedition in order to develop claims for which there is no factual basis. *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004).

Petitioner's hopes of finding some piece of evidence that might help him is not sufficient to demonstrate good cause. Thus, Petitioner has not made a credible showing that the requested discovery might lead to relevant evidence or yield evidence enabling him to prevail on his claim. Accordingly, his request for records dating from July 29, 1990, to July 29, 1995, from the various agencies is **DENIED**.

  **D.**   ***All Reports and Records of the Sevier County Sheriff's Department, TBI, 4th Judicial District Attorney General Regarding all Investigations Involving Bill Cogdill***

Petitioner contends he has good cause for discovery of all of the records pertaining to Bill Cogdill because they are relevant to his claim that the prosecution withheld information about Mr. Cogdill fighting with Mr. Griffin. Petitioner contends Mr. Cogdill was known to be a suspect at the time of the murders of Mr. Griffin and his sister, and there were allegations that Mr. Cogdill admitted to killing Connie Branam.

As previously stated, trial counsel investigated Mr. Cogdill. Petitioner's lead trial counsel, Mr. Dixon, acknowledged, that prior to trial, he had seen the investigator's note indicating that Cogdill and the victim had argued just before the victim disappeared. Mr. Dixon was aware of the information and particularly recalled meeting with Sutton's counsel and discussing "the alleged burning of [Cogdill's] house as mentioned in the memo. . . ." *Dellinger v. State*, 2007 WL 2428049,

at *24 (Tenn.Crim.App. 2007). Mr. Dixon testified that he located and interviewed Cogdill but that Cogdill denied any involvement in the murder or ever having made statements claiming that he was responsible." *Id.*

Rule 6 of the Federal Rules governing habeas cases requires the party requesting discovery to provide reasons for the request. Trial counsel was aware of the alleged altercation and there are no factually supported allegations supporting a reasonable belief that the prosecution withheld any information about Mr. Cogdill. Petitioner has not provided any reason to believe any information about Mr. Cogdill was withheld or that the records in these offices contain any information relevant to his claim that the prosecution withheld information about Mr. Cogdill. Petitioner's speculative allegations simply do not suggest that this discovery may enable him to demonstrate a right to relief. *See Pham v. Terhune*, 400 F.3d 740, 743 (9th Cir. 2005) (Petitioner must submit evidence from which a Court can conclude the requested discovery "may well" uncover "favorable, material information" that would lend support to the claims). Accordingly, this requested discovery is **DENIED**.

### E. *Asheville, North Carolina Police Department Records of Latent Print Results*

Petitioner claims he has good cause for the discovery of the Asheville Police Department records to demonstrate a *Brady* violation and an ineffective assistance of counsel claim. Petitioner contends the State only disclosed that there were no "identifiable prints" lifted from the shotgun hulls but failed to disclose it possessed a photograph of a latent print, which according to Petitioner, could demonstrate he was not in the class of persons with a print consistent with that latent print.

Initially, the Court observes that the report Petitioner attached to his motion reflects that there was a photograph of the latent print [Doc. 46-28], and there is no evidence before the Court from

21

which it can conclude trial counsel was not aware of this report. Moreover, a review of trial counsels' testimony during state post-conviction proceedings does not reveal any testimony from which such an inference can be made. There simply is no credible, reliable evidence before this Court that trial counsel were unaware of the photographed print or that they never received the report. Rather, there is only Petitioner's factually unsupported claim that the State failed to disclose it possessed a photograph of a latent print to defense counsel, and Petitioner's factually unsupported assumption that the latent print can exclude him from the class of persons with a print consistent to the latent print. Nevertheless, even if the print is not consistent with Petitioner's print, as explained above in section II.A.3, that alone does not lead to the conclusion that the evidence will lead to relevant evidence or entitle Petitioner to relief. Accordingly, because Petitioner has not demonstrated good cause to obtain the North Carolina Records this request is **DENIED**.

F.    ***Blount County Dispatch Records for February 21, 1992***

Petitioner contends he has good cause for discovery of the Blount County dispatch records for February 21, 1992, to try to discover an unidentified male juvenile who was waiting in the lobby of the jail with Sergeant Beeler. According to Petitioner, this discovery request supports his claims of actual innocence and ineffective assistance of counsel for failing to investigate his alibi defense. The case report [Doc. 46-32] reflects Officer Ken Beeler and Lt. Tommy Defoe reported seeing Petitioner and his co-defendant come into the jail lobby. Lt. Defoe stated the victim came out of the jail and left with Petitioner and his co-defendant. Petitioner requests the discovery to identify the juvenile who Officer Beeler had sitting in the lobby to determine if he saw the victim leave with "a short dark headed fat ugly woman," as Petitioner claims.

Officer Beeler testified, during Petitioner's trial that he was in the jail lobby with a person

that had been involved in a fight and had a nosebleed so the jail would not accept him. Officer Beeler sat the person in the lobby and called his parents to come get him [Addendum No.1, Vol. 20-22, pp. 425-427]. Lt. Thomas Defoe testified he was in the jail lobby when Petitioner and his co-defendant entered the lobby and one of them was carrying a blue flannel-type shirt. In addition, Lt Defoe saw Officer Beeler talking to the person he brought in who was awfully bloody. The Lieutenant was in the lobby and observed Petitioner and his co-defendant leave the building with a person "that they had evidently just released from jail." [Addendum No. 1,Vols. 20-22, pp. 430-34]. Lt. Defoe saw the three of them leave the jail lobby going toward the front of the courthouse but he could not see if anybody was outside [Addendum No. 1, Vols. 20-22, pp. 434-30].

It is obvious that this information was available to trial and state post-conviction counsel. Nevertheless, Petitioner has not provided any allegation that provides a reason to believe this juvenile will provide any relevant evidence. Petitioner has not provided anything indicating this juvenile will testify any differently than the police officers who were present or that he saw anything more than the testifying officers. There is simply nothing before this Court to demonstrate good cause to believe that the discovery of this information would lead to relevant evidence to sustain his claims, as he has not made a sufficient specific factual allegation that demonstrates good reason to believe the discovery would lead to relevant evidence. *See Payne v. Bell*, 89 F.Supp.2d 976, 970 (W.D. Tenn. 2000) (Petitioner "need only show good cause that the evidence sought would lead to relevant evidence supporting his position"); Habeas Rule 6(a).

Hence, Petitioner has failed to show good cause to warrant leave for the discovery of the Blount County dispatch records for February 21, 1992. This request is nothing more than a fishing expedition as Petitioner has not indicated there is any reason to believe this discovery will lead to any relevant information. These allegations fall far short of what *Bracy* requires to show good cause

23

for discovery. Accordingly, this request will be **DENIED** for failure to demonstrate good cause for the requested discovery.

### III.    Conclusion

For the reasons explained herein, the Court concludes Petitioner has not shown good cause for his discovery requests. Accordingly, Petitioner's motion for discovery is **DENIED** [Doc. 46].

SO ORDERED.

ENTER:


___s/ C. Clifford Shirley, Jr.___
United States Magistrate Judge