**Exhibit 19**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAMES **DELLINGER**, | ) | |
| | ) | |
| Petitioner, | ) | No. 3:09-CV-104 |
| | ) | |
| vs. | ) | Judge Varlan/Magistrate Shirley |
| | ) | |
| ROLAND **COLSON**, Warden, Riverbend | ) | |
| Maximum Security Institution | ) | **Death Penalty Case** |
| | ) | |
| Respondent. | ) | |

**Declaration of Dr. John T. Enloe,**
**Director of Pupil Personnel Services for Sevier County Board of Education**

My name is John T. Enloe; I am an adult resident of Sevier County, Tennessee. I state the following:

1) I am the Director of Pupil Personnel Services for the Sevier County Board of Education, a position I have held for 7 years. In my position I oversee all disciplinary hearings, due process issues and all matters pertaining to student services and parent/District relations.

2) Though my paternal family is from Sevier County, I, myself was born in Louisiana and raised as a child of missionary parents in Hiroshima and Kobe, Japan. Upon my return to the U.S. during college, I graduated from Rhodes College in Memphis, Tennessee, with a degree in English Literature and a minor in political science. I later obtained graduate degrees from the University of Tennessee and East Tennessee State University, receiving my doctorate in 2002.

3) I began teaching in Sevier County in 1974. The first school to which I was assigned was the Benson School, a two room school house serving grades 1-8.

4) The following scholastic year, I was assigned to Whites School, another two room school serving grades 1-8.

5) Prior to the 1975 federal enactment of The Education for All Handicapped Children Act (EHA, the precursor to 1990's amended and renamed Individuals with Disabilities Education Act, or IDEA), Sevier County, like much of the country, did not have any special services for the intellectually disabled. Indeed, there was no program for the identification or assessment of intellectual disabilities. Students who were severely mentally retarded were kept at home by their families, children with less severe impairments attended school along with their higher functioning contemporaries, often

completely undetected. While the detection of intellectual disabilities requires training and usually formal testing, teachers in Sevier County prior to EHA/IDEA had additional, unique impediments to even informal assessments to discern a student's mental capabilities.

6) To understand the impediments to the detection of a child's learning or cognitive limitations or differences, one must understand the backdrop of education in Sevier County. Even in the 1970's when I moved here, Sevier County still was primarily populated by small subsistence farm families and the children who attended the country schools were generally very poor. Many families were fundamentally unable to value the education of their children because of the parents' lack of education, the need for children to assist with farming, or simply due to the family's unrelenting struggle for survival. For many Sevier County families, in the midst of hunger and want, education was a luxury.

7) Many of the families in rural Sevier County, even in the 1970's and beyond, farmed tobacco, largely by hand. The families sometimes had a mule and a plow, but the labor was mainly accomplished by the sweat and muscle of the family members, including the children. Because of the need for children to assist with the family's subsistence farming, it was not uncommon for children to attend school sporadically -- dropping into and out of the classroom around the planting and harvesting seasons. Though Tennessee had a compulsory education act, compulsory attendance was not consistently enforced in rural Sevier County schools at the time. The irregular attendance by such a large percentage of the children complicated any attempt to categorize children by age or grade level. What resulted in the one-room country schools was that a teacher might have only eight formal "grades," but those grades would encompass multiple ages and even more skill/education levels.

8) Even by the time I arrived in the mid-1970s, communities within Sevier County were very insular. People came into town to go to the Co-Op and for other necessities, but did not identify themselves as part of a larger community in any meaningful way. There were no social services or welfare programs. An example of the insular nature of the county is found in my experience as a teacher here: from 1974 until 1986, I did not have any students at any of the schools I served who were not originally from Sevier County. When, in 1986, a student from outside Sevier County, joined our school, he was very much considered a novelty.

9) The School Board exercised little oversight over the rural, county schools. The Board sent a supervisor to each school once a month to check the attendance register. Beyond that monthly visit, the schools functioned (or failed to function) basically on the merits of the teacher(s) assigned to that school. When I began teaching in Sevier County, I was one of the first teachers to ever request to be placed in a small, country school, at least according to the Superintendent at that time. My request was considered odd, since for many of the teachers in the county, assignment to a country school was considered a form of banishment and preferential positions were in the more urban schools. The one-room country school houses were largely used as "disposal schools" where teachers who had

either fallen out of favor due to politics or some personal problem (such as problems with alcoholism, for instance) were placed. The textbooks at the country schools were *frequently* the discarded books from the in-town schools, reflecting the fundamental reality that the country schools received the short end of the available scholastic resources.

10) Even today, with a county which is superficially prosperous due to the tourism industry and the dollars which recent decades have brought, 67% of Sevier County school children qualify for a free or reduced lunch. In the Catlettsburg School district, where the former Kellum School used to stand, that number is much higher. In that district, 87% of the children qualify for free and reduced lunch, demonstrating the continued exceptional poverty of that area of the county which includes Allensville Road and Cold Springs Hollow.

I, declare, under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

J. T. Enloe

Dr. John T. Enloe,
Director of Pupil Personnel Services
Sevier County Board of Education

January 12, 2012

Date