**Exhibit 39**

XXXVIII

03C01-9706-CC-00226

**IN THE CIRCUIT COURT FOR BLOUNT COUNTY, TENNESSEE**
**FIFTH JUDICIAL DISTRICT**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | : | |
| Plaintiff, | : | |
| vs. | : | NO. C-6669, 6670 |
| JAMES DELLINGER and GARY SUTTON, | : | |
| Defendant. | : | |

FILED
MAY 27 1997
TOM HATCHER
CIRCUIT COURT CLERK

EXCERPT OF PROCEEDINGS
(Out-of-Jury Proceedings Regarding Juror Michael Everett)
September 1, 1996

THE HONORABLE D. KELLY THOMAS, JR., PRESIDING JUDGE

FILED
Clerk of the Courts
JUN 23 1997

**COURT REPORTER:**

**Karen B. Jinks**
**Official Court Reporter**
**State of Tennessee, Blount County**
**P.O. Box 22264**
**Knoxville, Tennessee 37933**
**(423) 675-2848**

## APPEARANCES

**FOR THE STATE:**

Mike Flynn
District Attorney General
Edward P. Bailey, Jr.
Assistant District Attorney General
Blount County Courthouse
Maryville, Tennessee 37801

**FOR THE DEFENDANT JAMES DELLINGER:**

Eugene Dixon
Attorney at Law
215 Ellis Avenue
Maryville, Tennessee 37804

Charles Deas
Attorney at Law
320 S. Court Street
Maryville, Tennessee 37804

**FOR THE DEFENDANT GARY SUTTON:**

F.D. Gibson, III
Attorney at Law
116 E. Harper Avenue
Maryville, Tennessee 37804

John Goergen
Attorney at Law
Knoxville, Tennessee

**IN THE CIRCUIT COURT FOR BLOUNT COUNTY, TENNESSEE**

STATE OF TENNESSEE, :
Plaintiff,:
vs. : No. C-6669, 6670
JAMES DELLINGER and :
GARY SUTTON, :
Defendants.:

**P R O C E E D I N G S**

(This cause came on to be heard and was commenced on the 19th day of August, 1996, before a Jury of twelve, presided by the Honorable D. Kelly Thomas, Jr., Judge, holding the Circuit Court for Blount County, Criminal Division, at Maryville, Tennessee, when Juror #11, Mr. Michael Everett, was called out of the jury room and questioned, as follows:)

**THE COURT:** Okay. Mr. Everett, I have made the lawyers aware of what had happened. And Mr. Phillips -- I'm going to tell you what Mr. Phillips told me. First of all, thank you for handling it the way you handled it. I mean, you've done exactly what needed to be done. So, let me relay to you what I know and then I'm going to let you tell

me what happened to make sure that we're all square on this. Mr. Phillips said that he got a call -- was it yesterday evening or this morning?

**THE JUROR:** This morning, I reckon.

**THE COURT:** Okay. This morning. I didn't catch when it was. And it was at the office, and he talked to a female person who told him that you had a child that was real sick and needed to speak with you. And he got you to the phone and he said after you spoke with whomever it was for just a couple of minutes, that -- or you listened to them, you hung up the phone and he said you looked irritated or agitated to him. And then you told him that you needed to talk to him. And you told him that your former wife had told you that she would give you $500 to vote not-guilty or for a not-guilty verdict on Mr. Sutton. And Mr. Phillips told you not to say anything about that to any other Jurors or anybody else, and that he would relay the information to me today when you all got here. What I need to know is, is that all correct and is there anything else that was said that

I need to know just from a factual standpoint?

**THE JUROR:** Well, she said -- she didn't say she would. She said they would.

**THE COURT:** Okay.

**THE JUROR:** And she called on -- I reckon saying that my daughter was sick. And she was kind of in and out and she wasn't really sick, she said she had gotten in trouble in school and she needed to talk to me about that. But other than that, that's --

**THE COURT:** This is your ex-wife?

**THE JUROR:** Yes, sir.

**THE COURT:** Who is she?

**THE JUROR:** I -- her last name now, it could be Hill, could be -- I'm trying to think -- Poe. Her first name is Jessica.

**THE COURT:** Jessica?

**THE JUROR:** Yes, sir.

**THE COURT:** Has she been here to court?

**THE JUROR:** Yes, sir. She came in and stayed for about 30 minutes. She came in and sat down back here somewhere, and in about 30 minutes she got up and walked back out. But I told Mr. Phillips the other day, I seen

her, she circled --

**THE COURT:** This week, last week?

**THE JUROR:** Last week, she circled around the courthouse when we was outside smoking. I mean, she didn't stop or nothing, but I seen her.

**THE COURT:** Okay. But she said they would give you $500?

**THE JUROR:** Yes, sir.

**THE COURT:** Did she say "we" or "they"?

**THE JUROR:** She said "they."

**THE COURT:** She said "they." Okay. So, she was talking like the money would come from somewhere other than her?

**THE JUROR:** Yes, sir.

**THE COURT:** She didn't name any names?

**THE JUROR:** No, sir.

**THE COURT:** Okay. And is that the extent of it?

**THE JUROR:** Well, she just went on, you know -- I told her that she ought to know better than that. She said, well, I told them that you probably wouldn't. And I told her, I

said, well, you made a big mistake just even calling.

**THE COURT:** Yeah, very big. But, I mean, that's not your fault. You haven't made any mistakes. You've done exactly what needs to be done. What I need to know is, also, how does -- having had that happen, how does that make you feel about staying on the Jury and listening to the instructions?

**THE JUROR:** I already told her, it's not going to change. I'm not going to change what I already decided on. They can take the money and do whatever they want with it. It just made me mad that -- you know, because of my daughter, mainly. My ex-wife, I ...

**THE COURT:** Okay. All right. I just -- and the lawyers want to be certain that you will be free to vote what your conscience dictates based on the proof that you've heard and after I tell you what the law requires without any influence or any second thoughts about what she said to you.

**THE JUROR:** Yes, sir, I understand that.

**THE COURT:** Is there any way at all

that that could creep into it?

**THE JUROR:** No.

**THE COURT:** It's made you mad, I can see that. And I don't blame you. Just don't be embarrassed. There's no reason for you to be embarrassed and I'm sorry to have to make such a big to-do.

**THE JUROR:** Oh, that's all right.

**THE COURT:** But I think you can understand how important it is --

**THE JUROR:** Yes, sir.

**THE COURT:** -- and why we need to know something about it.

(Whereupon, the following bench conference was held out of the hearing of the Juror:)

**THE COURT:** Is there something you all want me to ask him about the impact of this on him or anything?

**MR. FLYNN:** I think you need to be sure on the record that he's not communicated that to another Juror.

**THE COURT:** Yeah, I need to do that. Okay.

**MR. DIXON:** You fellows need to --

**THE COURT:** I thought I heard somebody's heart skip a beat when he said it wouldn't have any impact on what he's decided.

**MR. GIBSON:** That's what we're asking.

**THE COURT:** Well, I started thinking about that. I mean, there's nothing wrong with him having made some decisions at this point about factual matters.

**MR. FLYNN:** He should have an opinion at this point.

**THE COURT:** I would think, you know, that he has decided --

**MR. GIBSON:** Decided is different from opinions.

**THE COURT:** -- some things.

**MR. GIBSON:** You need to ask him what that means, I guess.

**THE COURT:** Well, I don't know. Has he decided facts or decided --

**MR. GIBSON:** Just, you know, if he's made up his mind which way he's going to vote, which is not what he's supposed to do. That's all.

**MR. BAILEY:** I don't think it would

be any more permissible to ask him about that than it would be to call every other Juror in and ask them the state of their mind right now at this point.

**THE COURT:** Yeah, I think so, too. And he's down to where he's supposed to be deciding some things.

**MR. FLYNN:** Exactly.

**MR. GIBSON:** Well, as far as Defendant Sutton is concerned, we'll put it on the record, we feel like he's been tainted enough that he should be excused.

**THE COURT:** Okay. That's fine. Do you all want that on the record or not? Mr. Sutton is saying that he ought to be excused.

**MR. DEAS:** We feel the same way, Your Honor. We feel that he can't really -- it's just not a fair -- either way.

**THE COURT:** Okay. Let me ask him about this other.

**MR. FLYNN:** Yes, sir.

**THE COURT:** Thank you.

(Whereupon, the bench conference was concluded and the proceedings continued as

follows:)

**THE COURT:** One other thing I forgot to ask you, Mr. Everett. Have you said anything about this to anybody else?

**THE JUROR:** No, sir. Mr. Phillips told me not to tell anybody and just to, you know, act like normal.

**THE COURT:** Good. All right.

**THE JUROR:** I just pulled a chair out on the balcony and sat there and --

**THE COURT:** That's what I want you to continue to do.

**THE JUROR:** Yes, sir.

**THE COURT:** Let me tell you one other thing before we stop and I bring you all back out and give you your charges -- or your instructions. Number one, do you think there is any way that this could have any influence with you following the law and taking the facts that you've heard and apply them to the law that I'm going to give you?

**THE JUROR:** No, sir.

**THE COURT:** And the other thing is, I don't know if some action will be taken against her because of this or not. And it

very well could be. And if there is something that I can do that's within my power to do, I will do it, if it's holding her in contempt or maybe the State's prosecuting her for whatever the name of -- you know, whatever this is. I don't know exactly what you would call it, because I haven't looked at all the statutes. But, anyway, that could put you in a position of being a witness against her.

**THE JUROR:** That's what I told her this morning, she really shouldn't have done what she done. You know, I don't want to get her in trouble, but I ain't going to, you know, jeopardize -- we spent a long time up here and -- it isn't right.

**THE COURT:** Right. Okay. All right, sir. Thank you very much. You can go back to the jury room.

(END OF PROCEEDINGS.)

# CERTIFICATE

I, the undersigned, Karen B. Jinks, Court Reporter for the Fifth Judicial District of the State of Tennessee, do hereby certify that the foregoing is a true, accurate, and complete transcript, to the best of my knowledge and ability, of the proceedings held out of the presence of the jury regarding Juror #11, Michael Everett, in the afore-captioned cause in the Circuit Court for Blount County, Tennessee, State Division, on the 1st day of September, 1996.

I do further certify that I am neither of kin, counsel, nor interest to any party thereto.

November 18, 1996

Court Reporter
State of Tennessee